THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROTHSCHILD PATENT IMAGING, LLC, <br><br> **Plaintiff,** <br><br> v. <br><br> TP-LINK TECHNOLOGIES CO., LTD., TP-LINK CORPORATION LTD., AND TP-LINK INTERNATIONAL LTD. <br><br> **Defendant.** | CIVIL ACTION NO. 2:24-cv-272 <br><br> JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff now comes with its Complaint against Defendants TP-Link Technologies Co., Ltd., TP-Link Corporation. Ltd., and TP-Link International Ltd. (collectively "TP-Link"), requests a trial by jury, and alleges as follows upon actual knowledge with respect to itself and its own acts and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1. This is an action for patent infringement brought by Plaintiff as the owner of the patent asserted in this Complaint. Plaintiff alleges that TP-Link infringes U.S. Patent No. 8,204,437, attached hereto as **Exhibit A**.

2. Plaintiff alleges that TP-Link both directly and indirectly infringes each of the Asserted Patents by making, using, offering for sale, selling and/or importing the Accused Products described below, in the United States without a license to do so. Plaintiff further alleges that TP-Link induces infringement by other third parties through their use of the TP-Link Accused Products as directed and instructed by TP-Link. Plaintiff seeks damages and other compensatory relief for TP-Link's prior and continued infringement of the Asserted Patents.

3. The '437 Patent has a priority date of August 8, 2008, and an adjusted expiration date reported by Google Patents as being **December 18, 2030**.

4. Additional patents in the Plaintiff's patent family include the following:

   a. US 8,437,797 B2,

   b. US 8,594,722 B2,

   c. US 8,798,544 B2,

   d. US 8,897,833 B2,

   e. US 9,674,377 B2, and

   f. US 9,936,086 B2.

## ACCUSED INSTRUMENTALITIES

5. TP-Link Defendant ("Company") makes, uses, sell, and/or offers to sell a system to distribute at least one digital photographic image, e.g. wireless security camera.

6. This element is infringed literally, or in the alternative, under the doctrine of equivalents.

7. For example, Company provides wireless security cameras such as Tapo C125 and Tapo C211 (taken as an exemplary Accused Instrumentalities (**Exhibit B**)), that are connected via Wi-Fi and comprise a feature of motion and person detection in which users create a customizable marked area called an activity zone, such that if motion is detected within the activity Zone, the camera notifies the user by sending an alert through the Tapo app and uploading the recording or snapshot to the video library ("distribute at least one digital photographic image"). Further, the setting up of the camera requires that the camera and the receiver device such as a phone or a tablet are connected to the same Wi-Fi network and paired with each other and the smart phone app.

## THE PARTIES

8. Plaintiff is a Texas limited liability company with an address of 1 East Broward Boulevard, Suite 700, Ft. Lauderdale, FL 33301.

9. On information and belief, Defendant TP-Link Technologies Co., Ltd. ("TP-Link Technologies") is a multi-national private limited company organized under the laws of the People's Republic of China ("PRC" or "China") with its principal place of business at South Building 5 Keyuan Road, Central Zone Science & Technology Park, Nanshan, Shenzhen, PRC, 518057.On information and belief, Defendant TP-Link Corporation. Ltd ("TP-Link Corporation")

2

is a private limited company organized under the laws of Hong Kong with its principal place of business at Suite 901, New East Ocean Centre, Tsim Sha Tsui, Hong Kong, China. On information and belief, TP-Link Corporation is a related entity of TP-Link Technology.

10. On information and belief, defendant TP-Link International Ltd. ("TP-Link International") is a private limited company organized under the laws of Hong Kong with its principal place of business located at Room 901-902,9/F, New East Ocean Centre, 9 Science Museum Road, Tsim Sha Tsui, Kwun Tong, KL, Hong Kong, China, 518057. TP-Link International and TP-Link Corporation are believed to share the same corporate office in Hong Kong.

11. On information and belief, TP-Link International is a related entity of TP-Link Technologies and TP-Link Corporation. TP-Link Technologies, TP-Link Corporation, and TP-Link International are referred to collectively as "TP-Link" or "Defendants," and on information and belief, have acted in concert with respect to the facts alleged herein such that any act of one is attributable to any and all of the others and vice versa.

12. TP-Link was founded in 1996 and on its website represents that it is "a global provider of reliable networking devices and accessories, involved in all aspects of everyday life." *See* https://www.tp-link.com/us/about-us/corporate-profile/ ("About TP-Link") (last visited April 16, 2024).

13. On information and belief, TP-Link is engaged in research and development, manufacturing, importation, distribution, sales and related technical services for home and business networks, including accused products.

14. These TP-Link products are made outside the United States of America and then are imported into the United States, distributed, and sold to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners. *Se*e https://www.tp-link.com/us/where-to-buy/ (last visited April 16, 2024). Those sales occur in the United States, and throughout Texas, including in this District. TP-Link affirmatively touts the advantages of its products to its prospective customers.

**JURISDICTION AND VENUE**

15. This is a civil action arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16. This Court has personal jurisdiction over TP-Link. Plaintiff is informed and believes, and on that basis alleges, that TP-Link conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States. TP-Link has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. TP Link regularly sells (either directly or indirectly), its products within this District. For example, TP-Link has placed and continues to place infringing products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this Judicial District and the State of Texas. TP-Link is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and Judicial District, including its infringing activities alleged herein, from which TP-Link derives substantial revenue from goods sold to Texas residents and consumers.

**A.    Personal Jurisdiction of TP-Link Technologies**

17. Upon information and belief, TP-Link is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, based on its substantial business activities conducted in the State of Texas and this Judicial District, including: (1) its infringing activities, as alleged herein, by which Defendant purposefully avails itself of the privilege of conducting its business activities in this State and this Judicial District and, thus, submits itself to the jurisdiction of this Court; and (2) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this Judicial District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported to and targeting Texas residents and residents of this Judicial District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries,

and/or consumers. See https://www.tp-link.com/us/where-to-buy/ (last visited April 16, 2024). Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing TP-Link Products in Texas, including in this District. For example, TP-Link Technologies is also the applicant for FCC registrations for the sale and use of TP-Link Products in the U.S., including being identified on labels as the manufacturing party.

18. This Court has personal jurisdiction over TP-Link Technologies, directly and/or through the activities of TP-Link Technologies intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including through the activities of Defendants TP-Link Corporation and TP-Link International. Through direction and control of these various entities, TP-Link Technologies has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over TP-Link Technologies would not offend traditional notions of fair play and substantial justice.

19. Upon information and belief, TP-Link Technologies controls or otherwise directs and authorizes the activities of its related entities, including Defendant TP-Link Corporation and TPLink International, directly via its agents and distribution partners, retailers (including national retailers), reseller partners, solution partners, brand ambassadors, and other service providers in the U.S., TP-Link Technologies has placed and continues to place infringing TP-Link Wi-Fi Products into the U.S. stream of commerce. TP-Link Technologies has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this Judicial District and the State of Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

20. TP-Link Technologies utilizes established distribution channels to distribute, market, offer

for sale, sell, service, and warrant infringing products directly to consumers and other users in the U.S., including providing links via its website to online stores, retailers, resellers, distributors, and solution partners offering such products and related services for sale. *See* https://www.tplink.com/us/where-to-buy/ (last visited Nov. 16, 2021).

21. On information and belifed, TP-Link Products are sold in retail stores, both brick-and-mortar and online, within this Judicial District and in Texas, including well-known and widely used retailers including Dell, Target, Office Depot, Office Max, Walmart, Sam's Club, BestBuy, Sears, QVC, Micro Center, Costco, or Lowe's located in this district.

22. on TP-Link Technologies connections and relationship with these national retailers and digital distribution platforms, TP-Link Technologies knows that Texas is a termination point of its established distribution channels, including the online and brick and mortar stores offering TP-Link Products to users in Texas. TP-Link Technologies, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc*., 2009 WL 1025467, at (E.D. Tex. 2009) ("[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

23. Upon information and belief, TP-Link Technologies, alone and in concert with related entities Defendant TP-Link Corporation and Defendant TP-Link International, manufactures and purposefully places infringing TP-Link Products in established distribution channels in the stream of commerce, including in Texas, via distributors and reseller partners, such at least those listed on TP-Link's website. For example, TP-Link Technologies imports to Texas or through a related entity and directly sells and offers for sale infringing TP-Link Products in Texas to distributor CDW Corporation ("CDW"), which has a distribution location at 5908 Headquarters Dr., Suite 200, Plano, TX 75024, which is in this district. *See*

*https://www.cdw.com/content/cdw/en/locations.html* (last visited April 16, 2024). Via this website, TP-Link Products are offered for sale to consumers in the State of Texas.

24. These suppliers and distributors import, advertise, offer for sale and sell TP-Link Products via their own websites to U.S. consumers, including to consumers in Texas. Based on TP-Link Technologies' connections and relationships, including supply contracts and other agreements with the U.S. and Texas-based distributors and suppliers, such as at least CDW, TP-Link Technologies knows and has known that Texas is a termination point of the established distribution channels for infringing TP-Link Products. TP-Link Technologies, alone and in concert with related entities Defendant TP-Link Corporation and Defendant TP-Link International has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Ultravision Technologies, LLC v. Holophane Europe Limited*, 2020 WL 3493626, at *5 (E.D. Tex. 2020) (finding sufficient to make a prima facie showing of personal jurisdiction allegations that "Defendants either import the products to Texas themselves or through a related entity"); *see also Bench Walk Lighting LLC v. LG Innotek Co., Ltd et al.*, Civil Action No. 20-51-RGA, 2021 WL 65071, at *7-8 (D. Del., Jan. 7, 2021) (denying motion to dismiss for lack of personal jurisdiction based on the foreign defendant entering into supply contract with U.S. distributor and the distributor sold and shipped defendant's products from the U.S. to a customer in the forum state).

25. In the alternative, this Court has personal jurisdiction over TP-Link Technologies under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law; TP-Link Technologies is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over TP-Link Technologies is consistent with the U.S. Constitution.

26. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391, 1400(b) for the reasons stated herein with respect to brick and mortar locations of shelf space in this district among retailers. Separately, TP-Link Technologies is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

**B. Personal Jurisdiction of TP-Link Corporation**

27.     Upon information and belief, Defendant TP-Link Corporation is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial business in this State and this Judicial District, including: (1) its infringing activities alleged herein, which purposefully avail the Defendant of the privilege of conducting those activities in this State and this Judicial District and, thus, Defendant submits itself to the jurisdiction of this Court; and (2) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this Judicial District, and/or deriving substantial revenue from infringing products offered for sale, sold, and imported to and targeting Texas residents and residents of this Judicial District vicariously through and/or in concert with its partners, alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, TP-Link Corporation and related entities Defendant TP-Link Technologies and Defendant TP-Link International manufacture, import, distribute, offer for sale, sell, and induce infringing use of TP-Link Products to distribution partners, retailers (including national retailers), reseller partners, solution partners, brand ambassadors, service providers, consumers, and other users.

28.     This Court has personal jurisdiction over TP-Link Corporation, directly and/or indirectly via the activities of TP-Link Corporation's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including related entities Defendant TPLink Technologies, and Defendant TP-Link International. Alone and in concert with or via direction and control of at least these entities, TP-Link Corporation has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas. For example, TP-Link Corporation is at least a related entity with TP-Link Technologies and TP-Link International in a global network of sales and distribution of TP-Link Products that includes retail stores and distributors operating in Texas, including this Judicial District. See Choose Your Location, https://www.tp-link.com/us/choose-your-location/ (last visited Nov. 16, 2021). TP-Link

Corporation directly and via direction and control of or by its related entities participates in the manufacture, shipping, importing and distribution of TP-Link Products to the U.S. For example, TP-Link Corporation is the applicant for FCC registrations for the sale and use of TP-Link Products in the U.S., including being identified on labels as the manufacturing party. As a part of TP-Link's global manufacturing and distribution network, TP-Link Corporation also purposefully places infringing TP-Link Products in established distribution channels in the stream of commerce, including in Texas, via distribution partners, retailers (including national retailers), reseller partners, solution partners, brand ambassadors, service providers, consumers, and other users. For example, TP-Link Corporation provides tp-link.com, which directs users to purchase in the infringing products. https://www.tp-link.com/us/aboutus/privacy/ (indicating TP-Link Corporation provides TP-Link branded hardware, firmware, and software and the TP-Link website); see also https://www.tp-link.com/us/home-networking/wifirouter/archer-ax11000/ (directing users to "Buy Now"). Therefore, TP-Link Corporation, alone and in concert with related entities Defendant TP-Link Technologies, and Defendant TP-Link International has purposefully directed its activities at Texas, and should reasonably anticipate being named as a defendant in this Court on this basis.

29. TP-Link Corporation also recruits "TP-Link Brand Ambassadors" via a "Power User" program; these Brand Ambassadors are consumers and users of TP-Link Products that are recruited in the U.S. based on their social media presence and amount of use of TP-Link Products. See TPLink Brand Ambassador Program, TP-Link, https://www.tp-link.com/us/brandambassador/. These brand ambassadors (also known as "influencers") are compensated for promoting TP-Link Products on social media and participating in marketing campaigns to raise awareness of TP-Link Products and their respective brands, which, ultimately, increases sales.28. TP-Link Corporation also provides application software ("apps"), such as the "TP-Link Deco," "TP-Link Omada," "TP-Link Tether," "tpPLC," "tpMiFi," and "Wi-Fi Toolkit" apps for download and use in conjunction with and as a part of the wireless communication network that connects TP-Link Products and other network devices. These apps are available via digital distribution platforms operated by

Apple Inc. and Google for download by users and execution on smartphone devices.

29. This Court has personal jurisdiction over TP-Link Corporation, directly and/or through the activities of TP-Link Corporation's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including through the activities of Defendant TP-Link Technologies, and TP-Link International. Through its own conduct and through direction and control of these entities or operating under the control of these other Defendants, TP-Link Corporation has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over TP-Link Corporation would not offend traditional notions of fair play and substantial justice.

30. In the alternative, the Court has personal jurisdiction over TP-Link Corporation under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law; TP-Link Corporation is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over TP-Link Corporation is consistent with the U.S. Constitution.

31. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, TP-Link Corporation is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

**C. Person Jurisdiction of TP-Link International**

32. Upon information and belief, Defendant TP-Link International is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial business in this State and this Judicial District, including: (1) its infringing activities alleged herein, which purposefully avail the Defendant of the privilege of conducting those activities in this State and this Judicial District and, thus, submits itself to the jurisdiction of this Court; and (2) regularly doing or soliciting business, engaging in other

10

persistent conduct targeting residents of Texas and this Judicial District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this Judicial District vicariously through and/or in concert with its partners, alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, TP-Link International and related entities Defendant TP-Link Technologies and Defendant TP-Link Corporation manufacture, import, distribute, offer for sale, sell, and induce infringing use of TP-Link Products to distribution partners, retailers (including national retailers), reseller partners, solution partners, brand ambassadors, service providers, consumers, and other users.

33. This Court has personal jurisdiction over TP-Link International, directly and/or indirectly, via the activities of TP-Link International's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including related entities Defendant TPLink Technologies and Defendant TP-Link Corporation. Alone and in concert with, or via direction and control of, at least these entities, TP-Link International has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas. TP-Link International also directly and via direction and control of or by its related entities participates in the manufacture, shipping, importing and distribution of TP-Link Products to the U.S. As a part of TP-Link's global manufacturing and distribution network, TP-Link International also purposefully places infringing TP-Link Products in established distribution channels in the stream of commerce, including in Texas, via distribution partners, retailers (including national retailers), reseller partners, solution partners, brand ambassadors, service providers, consumers, and other users. For example, TP-Link International owns the TP-Link trademarks found on the accused products. *See e.g.https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4805:e2wy6n.2.5*. Therefore, TP-Link International, alone and in concert with related entities Defendant TP-Link Technologies and Defendant TP-Link Corporation, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis.

34. This Court has personal jurisdiction over TP-Link International, directly and/or through the activities of TP-Link International's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including through the activities of Defendant TP-Link Technologies and TP-Link Corporation. Through its own conduct and through direction and control of these entities or control by other Defendants, TP-Link International has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over TP-Link International would not offend traditional notions of fair play and substantial justice.

35. In the alternative, the Court has personal jurisdiction over TP-Link International under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law; TP-Link International is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over TP-Link International is consistent with the U.S. Constitution.

36. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, TP-Link International is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

37. On information and belief, Defendants TP-Link Technologies, TP-Link Corporation, and TP-Link International each have significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this Judicial District both proper and convenient for this action.

## PATENT-IN-SUIT

38. The United States Patent and Trademark Office ("USPTO") duly and legally issued the '437 Patent, entitled "Wireless Image Distribution System and Method." The '437 Patent is attached as **Exhibit A**. Plaintiff is the owner and exclusive right to enforce of the '437 Patent.

Plaintiff possesses all rights of recovery under the '437 Patent, including the exclusive right to recover for past, present and future infringement. The '437 Patent has a priority date of May 14, 2012. The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that Patent Examiners all agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit. S*ee Stone Basket v. Cook Medical, Inc.*, 892 F.3d 1175, 1179 (Fed. Cir. 2018) ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (*citing Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton*, 879 F.3d 1332, 1342 (Fed. Cir. 2018).

39.     The Examiners at the USPTO searched, researched and investigated the patentability of the asserted patent claim as shown by the over twelve (12) categories of prior art the Examiners cited on the face of the patent, such as, (1) art category H04N1/00307, "Connection or combination of a still picture apparatus with another apparatus, e.g. for storage, processing or transmission of still picture signals or of information associated with a still picture with a telecommunication apparatus, *e.g.* a switched network of teleprinters for the distribution of text-based information, a selective call terminal with a mobile telephone apparatus;" (2) G06F3/005, "Input arrangements through a video camera;" (3) H04L67/04, "Protocols specially adapted for terminals or networks with limited capabilities; specially adapted for terminal portability;" (4) H04N1/00103, "Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, e.g. via satellites;" (5) H04N1/00127, "Connection or combination of a still picture apparatus with another apparatus, e.g. for storage, processing or transmission of still picture signals or of information associated with a still picture;" (6) H04N1/00204, "Connection or combination of a still picture apparatus with another apparatus, e.g. for storage, processing or transmission of still picture signals or of information associated with a still picture with a digital computer or a digital computer system, e.g. an internet server;" (7) H04N21/4223, "Cameras;" (8) H04N21/6131, "Network physical structure; Signal processing specially adapted to the downstream path of the transmission network involving transmission via a mobile phone network;" (9) H04W4/02,

"Services making use of location information;" (10) H04W4/023, "Services making use of location information using mutual or relative location information between multiple location based services [LBS] targets or of distance thresholds;" (10) H04W4/21, "Services signaling; auxiliary data signaling, i.e. transmitting data via a non-traffic channel for social networking applications;" (11) H04W4/80, "Services using short range communication, e.g. near-field communication [NFC], radio-frequency identification [RFID] or low energy communication;" (12) H04N2201/0084, "Digital still camera." These thorough searches demonstrate the importance of the patented inventions of the '437 Patent.

40. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all the claims of the Patents-in-Suit to issue. It is presumed that Examiners used their knowledge of the art when examining the claims. *See K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill. In re Sang Su Lee, 277 F.3d 1338, 1345 (Fed. Cir. 2002).

41. The claims of the '437 Patent are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art. See 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); see also AbbVie Deutschland GmbH v. Janssen Biotech, 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC*, 545 F.3d 1373, 1382 (Fed. Cir. 2008). Likewise, the claims of the '437 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners. *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.*, 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation*, 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid*, 774 F.2d 448, 454

(Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

42. The '437 patent explains that for exemplary purposes only, "weddings, parties, vacations, sporting events, tours, etc., provide an ideal situation where a number of individuals such as, friends, family members, or acquaintances, may be simultaneously taking photographs, attempting to take photographs, or otherwise have the desire to obtain copies of photographs taken by other individuals." (**Exhibit A**, '437 Patent, Col. 1:52-57). The patent continues "In such a situation, it is rather common for one or more of the photographers or individuals capturing the digital photographic image(s) to express his or her intent to share or otherwise distribute the image(s), for instance by e-mailing them directly to the other individuals and/or uploading the image(s) to an accessible location on the World Wide Web." (**Exhibit A,** '497 Patent, Col. 1). "For example, many web sites and/or companies, including, SHUTTERFLY®, KODAK® EASYSHARE®, and SONY® IMAGESTATION®, provide services for uploading and sharing photographs. While this may be one way to share the image, it is not ideal, as oftentimes, the images are in fact never sent, uploaded, or shared as initially intended. In addition, even in the event the digital photographic images are in fact uploaded to the web servers, it may take days, weeks, or even months to do so, and further, use of these third-party services may often lead to excessive, unnecessary frustration and aggravation." (**Exhibit A**, at Columns 1 and 2). The patent goes on to explain that the current need the patent claims address. "As such, there is a current need in the art for an image distribution system and method which is structured to dispose one or more capturing devices in a communicative relation with one or more receiving devices for instantaneous, automatic, and/or selective distribution of images there between." *Id.*

43. "The present invention is directed to a system and method for distributing at least one digital photographic image from a capturing device, such as, for example, a digital camera or other mechanism having digital photographic capabilities, to one or more receiving devices, wherein the receiving device(s) is cooperatively structured to automatically and/or selectively receive the digital photographic image(s) from the capturing device." *Id.*

## COUNT ONE

### (Infringement of United States Patent No. 8,204,437)

44. Plaintiff refers to and incorporates the allegations in Paragraphs above, the same as if set forth herein.

45. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, et seq.

46. Defendant has knowledge of its infringement of the '437 Patent, at least as of the service of the present complaint.

47. The '437 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

48. Defendant has infringed and continues to infringe one or more claims, including Claim 1 of the '437 Patent, by manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as **Exhibit B**) its product which is an application (i.e., Afterlight App) for practices a method performed by an image-capturing mobile device (e.g., mobile phone or camera for capturing the images) ("Product"), which infringes at least Claim 1 of the '437 Patent. Defendant has infringed and continues to infringe the '437 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

49. Claim 1 of the '437 Patent envelops a method performed by Defendant's software app running on an image-capturing mobile device. The defendant (Afterlight Collective, Inc.) provides an application (i.e., Afterlight App) that practices a method performed by an image-capturing mobile device (e.g., mobile phone or camera for capturing the images).  (**Exhibit B** at 1).

50. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '437 Patent Claim 1, by having its employees internally test and use these Exemplary Products.

51. The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

52. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale,

market, and/or import into the United States, products that infringe the '437 Patent. On information and belief, Defendant has also continued to sell the Exemplary Defendant Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '437 Patent. *See* **Exhibit B** (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

53. At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '437 Patent, literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the '437 Patent.

54. **Exhibit B** includes at least one chart comparing the Exemplary '437 Patent Claim to the Exemplary Defendant Products. As set forth in this chart, the Exemplary Defendant Products practice the technology claimed by the '437 Patent. Accordingly, the Exemplary Defendant Products incorporated in this chart satisfy all elements of the Exemplary '437 Patent Claim 1.

55. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of **Exhibit B**.

56. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

57. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

58. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

59. Plaintiff is in compliance with 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

60. Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a) Enter judgment for Plaintiff on this Complaint on all cases of action asserted herein;

(b) Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receives notice of the order from further infringement of Patent(s)-in-Suit (or, in the alternative, awarding Plaintiff running royalty from the time judgment going forward);

(c) Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284;

(d) Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: April 23, 2024                             Respectfully Submitted,

*/s/ Randall T. Garteiser*
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
M. Scott Fuller
  Texas Bar No. 24036607
  rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**COUNSEL FOR PLAINTIFF**